UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

BRANDI L. TAYLOR                                         CIVIL ACTION

VERSUS                                                  NO.  09-3801

JOTUN PAINTS, INC.                                      SECTION  "N"  (5)

## ORDER AND REASONS

Before the Court is the Motion for Summary Judgment (Rec. Doc. 15), filed by Defendant

Jotun Paints, Inc. ("Jotun").  This motion is opposed by Plaintiff Brandi L. Taylor. After considering

the memoranda filed by the parties and the applicable law, the Court rules as set forth herein.

## I.      BACKGROUND

On May 27, 2003, Plaintiff began work with Jotun as the receptionist.  (Exhibit A to Rec.

Doc. 35, p.  20).  In April 2007, she became the Accounts Payable Office Assistant, reporting to

Robin Colton ("Colton"). (*Id.* at pp. 20-21).  Around this time, Plaintiff informed her co-workers

of her pregnancy.  (*Id.* at p. 30).  Plaintiff testified that, thereafter, Supervisors Colton and Dawn

Adams ("Adams") became rude and confrontational with her. (*Id.* at p. 25).

On April 25, 2007, Plaintiff  experienced a pregnancy-related complication and was out of

work for a few days, returning on May 3, 2007.  (*Id.* at pp. 25-28). Plaintiff has alleged that she

sensed tension at work over the next few days. (*Id.* at p. 30). On May 7, 2007, after what Plaintiff described as a stressful meeting between her, Colton, and Adams regarding Plaintiff's pregnancy, she visited her obstetrician, who placed her on bedrest for the remainder of her pregnancy because of gestational hypertension. (Id. at pp. 34-35, 37, 50). This was her last day of work at Jotun. (Exhibit 4 to Rec. Doc. 15, p. 66).

On May 15, 2007, she applied for short term disability benefits. (Id. at pp. 53-54). On May 18, 2007, Dr. Andre Guette (OBGYN) ("Dr. Guette") completed a form to enable Plaintiff to obtain short-term disability payments. The form stated that, because Plaintiff had a high-risk pregnancy, she was unable to work from May 11, 2007 to December 22, 2007, which was roughly eight weeks after her November 10, 2007 due date. The form classified her as a "Class 5" physical impairment and specifically stated that she was incapable of performing minimal sedentary activity (i.e, essentially that no modifications to her job would allow her to perform it). (See Exhibit 5 to Rec. Doc. 15).

On July 18, 2007, Plaintiff received an email from Colton stating that unless her circumstances changed, if she did not return to work by August 23, 2007, her employment with Jotun would be terminated. The email further indicated that Jotun would then seek a replacement for her position. (Exhibit 11 to Rec. Doc. 15). On July 25, 2007, Jotun claims it again informed Taylor that it would seek a replacement for her Accounts Payable Assistant position if she did not return to work by August 23, 2007. (Exhibit 12 to rec. doc. 15).

On August 16, 2007, Plaintiff gave birth to a baby boy in an emergency C-section three months early. (Exhibit A to Rec. 35, pp. 56-57). The next day, Plaintiff's mother, Wanda Taylor, called Colton to inform her of the birth of Plaintiff's baby. On August 30, 2007, Jotun sent a

certified letter to Plaintiff terminating her employment due to her inability to return to work. (Exhibit 13 to Rec. Doc. 15). Jotun provides its employees with seven days sick leave each year. (Exhibit 7 to Rec. Doc. 15, p. 29). Jotun also provides its female employees with six weeks maternity leave. (Exhibit 8 to Rec. Doc. 15, p. 5 of 9; Exhibit 7 to Rec. Doc. 15, pp. 30-31). Plaintiff claims in her Second Supplemental and Amended Complaint that she was provided with sixteen weeks of medical leave before she was terminated by Jotun. (Rec. Doc. 9, ¶21).

On February 26, 2008, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging pregnancy discrimination under Title VII (Exhibit 6 to Rec. Doc. 35), and on March 6, 2009, Plaintiff received her "Notice of Right to Sue" letter. (Exhibit 7 to Rec. Doc. 35). Plaintiff filed this action against Jotun on June 8, 2009. (Rec. Doc. 1).

## II.   GENERAL ARGUMENTS OF THE PARTIES

Jotun Paints argues that there is no genuine issue as to any material fact in this matter, and that the undisputed facts show that the Plaintiff was unable to come to work to perform her job duties, and thus was not qualified for her job. Jotun also asserts that there is no evidence that any non-pregnant person was treated more favorably than Plaintiff (i.e., no non-pregnant employee was allowed to be out of work for more than sixteen weeks without being terminated). Thus, Jotun asserts that Plaintiff cannot establish a prima facie case of discrimination, and this matter should be dismissed.

In opposition, Plaintiff claims that she was terminated from her employment at Jotun two weeks after giving birth, violating the Pregnancy Discrimination Act ("PDA") under federal law and the Louisiana Anti-Discrimination Law. While Jotun asserts that Plaintiff was terminated because

of her absence from work, Plaintiff argues that her absence from work was directly related to her pregnancy.

## III.    LAW AND ANALYSIS

### A.    Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law ." Id.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its summary judgment burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); see also *Lavespere v. Liberty Mut. Ins. Co.*, 910 F.2d 167, 178 (5th Cir.1990). Once the moving party carries its burden pursuant to Rule 56(c), the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2553; see also *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Auguster v. Vermillion*

*Parish School Bd.*, 249 F.3d 400, 402 (5th Cir.2001).

When considering a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir.2002), and draws all reasonable inferences in favor of that party. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 764 (2001). Factual controversies are to be resolved in favor of the nonmoving party, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (citations omitted). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." See *id.* (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990)).

Although the Court is to consider the full record in ruling on a motion for summary judgment, Rule 56 does not obligate it to search for evidence to support a party's opposition to summary judgment. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir.2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."). Thus, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden of demonstrating a genuine issue is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier

of fact to find for the nonmoving party. *Smith v. Amedisys*, 298 F.3d 434, 440 (5th Cir.2002).

## B.     Pregnancy Discrimination

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U .S.C. § 2000e-2(a). As amended by the first clause of the PDA, Title VII defines the term "because of sex" as including, but not limited to, "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). A claim brought under the PDA is analyzed like any other Title VII discrimination claim. *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir.1998). Title VII discrimination can be established through either direct or circumstantial evidence. See *Wallace v. Methodist Hospital System*, 271 F.3d 212, 219 (5th Cir.2001). Plaintiff's case is built on the latter, which means that it is analyzed under the familiar *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, the plaintiff must first create a presumption of discrimination by making out a prima facie case of discrimination.[1] See *Wallace*, 271 F.3d at 219. In order to make out a prima facie case of pregnancy discrimination, a plaintiff must show: (1) she was a member of the protected class; (2) she was qualified for the position; (3) she was discharged; and (4) that other

---

[1]     Plaintiff raises the argument that, under *McDonnell Douglas* and its progeny, there is no requirement that she be required to prove a prima facie case of discrimination to avoid dismissal of her suit on summary judgment. Plaintiff cites to a District of Columbia Circuit case, *Brady v. Office of Sergeant at Arms*, 520 F.3d 490 (D.C.Cir. 2008) for the proposition that once a defendant asserts a non-discriminatory reason for terminating an employee, there is no need for an employee to ever be required to establish a prima facie case of employment discrimination. *Brady* is not controlling authority, and this Court declines to follow it, particularly because Plaintiff has provided no United States Supreme Court case or Fifth Circuit case which has overturned the necessity of a plaintiff to prove a prima facie case in an employment discrimination action, as required by *McDonnell Douglas*.

similarly situated nonpregnant employees were more favorably treated. See *Urbano*, 138 F.3d at 206. Once the prima facie case is made, the familiar *McDonnell Douglas* burden-shifting exercise would ordinarily ensue. However, because this Court finds that Plaintiff has failed to make a prima facie case of pregnancy discrimination, the analysis ends after this inquiry.

Jotun does not refute the fact that Plaintiff meets factors one and three; however, Jotun asserts that Plaintiff cannot carry her burden with regards to factors two and four. Specifically, Jotun claims that Plaintiff was not qualified for the position from which she was terminated (because she was unable to come to work) and further claims that Plaintiff cannot prove that others similarly situated outside of the protected class (i.e., similarly-situated non-pregnant employees) were more favorably treated. This Court agrees.

First, the Court concludes that Plaintiff failed to establish the second element of a prima facie case - that she was qualified for the position. Plaintiff acknowledges that, pursuant to her doctor's orders, she could not return to work. While Plaintiff seems to argue that she could have worked from home (and that other employees were sometimes allowed to work from home), she fails to acknowledge that, according to the May 18, 2007 short term disability form completed by Dr. Guette, she had a "high-risk pregnancy", that caused her to be unable to work from May 11, 2007 to December 22, 2007. The form classified her as a "Class 5" physical impairment and specifically stated that she was incapable of performing minimal sedentary activity (i.e, essentially that no modifications to her job would allow her to perform it). (See Exhibit 5 to Rec. Doc. 15). Based on this evidence, Plaintiff simply was unable and, thus, not qualified to perform the functions of the job due to her inability to work.

As several courts have recognized, an essential element of any job is an ability to appear for

work. *Rogers v. Int'l Machine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir.1996), *Tyndall v. Nat'l Educ. Centers, Inc. of Cal.*, 31 F.3d 209, 213 (4th Cir.1994)(an employee "who does not come to work cannot perform any of his job functions, essential or otherwise."); *Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir.1998) (holding that attendance is a necessary job function and that the plaintiff, who was unable to come to work on a regular basis, could not establish that he could perform the essential functions of his job); *In Re INSpire Ins. Solutions, Inc.*, 2008 WL 2065981 (Bkrtcy. N.D. Tex. May 14, 2008); *Gorman v. Well Mfg. Corp.*, 209 F. Supp.2d 970, 980 (S.D. Iowa, 2002) (pregnant employee's excessive absenteeism precluded court from deeming her qualified to perform the essential functions of her job). The fact that Plaintiff's absences were caused by pregnancy does not dispense with the general requirement that employees must show up for work. Indeed, it is well-established that a pregnant employee is only entitled to be treated as well as other non-pregnant employees, not better. *Mascorro v. Am. Funds Serv, Co., Inc.*, 2006 U.S. Dist. LEXIS 94012, *7, 2006 WL 3782861 (W.D. Tex. Nov. 20, 2006)(granting summary judgment for employer on plaintiff's pregnancy discrimination claim where plaintiff was unable to perform her job based on her high number of absences in violation of employer's attendance policy). Here, Plaintiff was absent from work for a total of ***16 weeks*** before she was terminated. Thus, this Court finds that Plaintiff was not qualified for her position. She has failed to meet the second prong of the test for establishing a prima facie case of pregnancy discrimination.

Next, the Court finds that Plaintiff failed to establish the fourth element of a prima facie case for pregnancy discrimination, i.e., that non-pregnant employees were treated more favorably. Indeed, "[t]he [PDA] does not protect a pregnant employee from being discharged for being absent from work even if her absence is due to pregnancy or to complications of pregnancy, unless the

absences of nonpregnant employees are overlooked." *Stout v. Baxter Healthcare Corp.*, 282 F.3d 856, 859 (5th Cir.2002). The statute has been interpreted to provide equal treatment for pregnant women, not preferential treatment. *Urbano v. Continental Airlines, Inc.*, 138 F.3d 204 (5th Cir.1998). Plaintiff offers three examples, which all are materially distinguishable and thus insufficient to satisfy the fourth element of the prima facie case.

First, Plaintiff notes that a former employee of Jotun, Leslie Levicki ("Levicki"), was allowed more than 16 weeks leave related to two problematic pregnancies. (Exhibit C to Rec. Doc. 35, pp. 46-49). Specifically, Levicki was allowed an additional six weeks of maternity leave in addition to more than 3 months of before-birth medical leave. (Exhibit B to Rec. Doc. 35, p. 81). Levicki was also allowed to work from home while she was on leave. (Exhibit C to Rec. Doc. 35, p. 112). Although Levicki was pregnant and had pregnancy-related health issues, she is (and was) not a "non-pregnant" employee who was treated better than Plaintiff. Second, Plaintiff refers to a former employee of Jotun, Kris Keller ("Keller"), who was out for an extended period of time and was not terminated. Plaintiff claims that Keller stubbed his toe and was out quite a few months, was not threatened with being fired, and was returned to his former position as warehouse supervisor when he returned to work. (Exhibit 4 to Rec. Doc. 15, p. 77). However, Plaintiff had missed sixteen weeks of work in 2007 before she was terminated. Keller was not out more than sixteen weeks without being terminated. Keller was out of work with a medical problem for approximately thirteen weeks from the end of October 2006 to the beginning of February of 2007. (Exhibit A to Exhibit 6 to Rec. Doc. 15). Thus, Keller did not exceed sixteen weeks of leave without being terminated, and he was not treated more favorably than Plaintiff. Last, in her Sur-Reply, Plaintiff claims that Keller was out of work for a second period because of congestive heart failure in May of 2008. Plaintiff

9

alleges that Keller was out for the full time allowed on short term disability, a period of six months. (See Rec. Doc. 49). However, in response to this argument, Jotun notes that Keller never returned to work at Jotun after his congestive heart failure. Jotun notes that Keller was terminated when he attempted to return to work. (Exhibit 1 to Rec. Doc. 80, p. 32). Thus, Keller did not receive more favorable treatment than Plaintiff. Both employees exceeded their allowed amount of leave, and both were both terminated.[2] Thus, the Court finds that Plaintiff has failed to satisfy the fourth element of the prima facie case, showing that a non-pregnant employee received more favorable treatment.

Since no genuine issues of material fact exist regarding discrimination on the basis of pregnancy under the PDA, Jotun is entitled to judgment as a matter of law. However, to the extent they have not been abandoned, Plaintiff has raised similar claims under state law.[3] Jotun makes a brief argument as to the dismissal of these claims in its motion, arguing that after the dismissal of the federal PDA claim, the Court should decline to exercise jurisdiction over the state law claims. (See Rec. Doc. 15-2, p. 18 of 19). Unfortunately, at this late juncture, so close to trial, the Court is unwilling to do so. However, at a telephone conference held on this date, the Court has confirmed

---

[2]     Plaintiff also claims that Keller received more short term disability benefits than she did. Jotun, however, explains that the disability insurance is administered by Reliance Standard Life Insurance Company, and Jotun has no control over the way the insurance company decides to make disability payments. However, it should be noted that Plaintiff received short term disability payments from May 2007 until October of 2007, a period of approximately five months. (Exhibit 2 to Rec. Doc. 80). When Plaintiff's disability ended, she was no longer entitled to additional disability benefits. Thus, this argument fails as well.

[3]     Plaintiff's Second Supplemental and Amended Complaint makes reference to the Louisiana Employment Discrimination Law ("LEDL") for "discrimination insofar as [Plaintiff] asserts that [Jotun] discriminated and/or retaliated against her due to her pregnancy and/or her request for maternity leave." (Rec. Doc. 9, ¶38). The Pretrial Order also makes vague reference to claims under state law. (See Rec. Doc. 97, ¶¶ 4, 9 (19)(20). However, Plaintiff's proposed jury instructions and proposed jury verdict form (See Rec. Docs. 95, 96), which were due on September 14, 2010, make no reference to any such state law claims, leading the Court to believe such claims might have been abandoned.

with all counsel that any state law claims raised are time-barred, and thus, are no longer at issue.

**IV.    CONCLUSION**

Considering the foregoing, **IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 15)** is **GRANTED**, as expressed herein.

New Orleans, Louisiana, this <u>15th</u> day of <u>September,</u> 2010.

_____
**KURT D. ENGELHARDT**
**United States District Judge**